

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 8, 2020

**BY ECF**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    **United States v. Grafton E. Thomas**, 20 Cr. 21 (CS)

Dear Judge Seibel:

    The parties write in response to Your Honor's December 1, 2020 order. (Dkt. No. 40). On December 3, 2020, the parties spoke by phone regarding how the Court should proceed in light of the psychiatric report from the U.S. Medical Center for Federal Prisoners in Springfield, Missouri ("FMC Springfield"). During this discussion, the parties were not able to agree to next steps, and accordingly submit this letter setting forth their respective positions.

    As described in more detail below, the Government does not dispute that the defendant currently is not competent to stand trial, and respectfully submits that the Court should order an evidentiary hearing, so that the Court can determine whether to direct that the defendant be hospitalized for treatment for an additional reasonable period of time until his mental condition is so improved that trial may proceed, pursuant to 18 U.S.C. § 4241(d)(2)(A). The defense respectfully submits that the Court should accept the BOP conclusion that Mr. Thomas is not competent and that restoration is not substantially likely.

    **I. The Government's Position**

    **A. Background**

    On December 28, 2019, the defendant attacked Jewish congregants celebrating Hanukkah at their Rabbi's home in Monsey, New York. The defendant injured five people in this brutal stabbing attack. In late March 2020, one of the victims died. On January 9, 2020, a Grand Jury in this District indicted the defendant on five counts of attempting to kill because of the victims' actual and perceived religion and five counts of obstructing the free exercise of religious belief through the use of a dangerous weapon and attempting to kill the victims.

On January 27, 2020, Dr. Andrew Levin, who was retained by the defense, provided a psychiatric competency report (the "Levin Report"). Dr. Levin diagnosed the defendant with Schizophrenia, but observed that the treatment the defendant was receiving—Fluoxetine (Prozac) and Latuda (the anti-psychotic medication lurasidone HCI)—had resulted in an improvement in the defendant's condition. (Levin Report at 8). Dr. Levin observed that the defendant understood, in general, the charges against him, the distinction between pleading guilty and not guilty, and the roles of the different parties in this case, and that he was therefore "aware of the charges against him and the nature of the proceeding." (*Id.* at 7-8). However, because the defendant was "unable to coherently narrate events around the instant offense," Dr. Levin concluded that the defendant was not "able to assist properly in his defense," and that further treatment was therefore "necessary to ameliorate symptoms of his illness so that he can properly assist in his defense." (*Id.* at 8).

On February 7, 2020, Dr. Michelle Casarella provided a psychiatric competency report, pursuant to an order dated January 16, 2020 from the Honorable Kevin Russo, a judge of the Rockland County Court in the Ninth Judicial District of New York (the "Casarella Report"). Based on an interview with the defendant on February 5, 2020 (conducted jointly with Dr. Shanah Segal), and her review of medical records and a declaration from defense counsel, Dr. Casarella concluded that the defendant was capable of understanding the proceeding against him and to assist in his defense. (Casarella Report at 1). Dr. Casarella observed that, during his interview, the defendant's "thought process was coherent and appropriate and his memory appeared intact." (*Id.* at 2). Dr. Casarella also observed that the defendant "was able to coherently explain his particular mental health symptoms and provide substantial information about his mental health history." (*Id.*). Dr. Casarella therefore concluded that:

> Mr. Thomas demonstrated an adequate factual and rational understanding of the legal process and court personnel. Additionally, he demonstrated adequate cognitive and emotional stability to meaningfully contribute to the overall legal proceedings. It seems that Mr. Thomas' current prescribed psychotropic medication regimen has aided in mood stability and management of symptoms of psychosis. As per past community records, Mr. Thomas' psychiatric symptoms have historically stabilized with the aid of psychotropic medication. It is my professional opinion that at this time, Mr. Thomas has the capacity to proceed.

(*Id.* at 6).

On February 12, 2020, Dr. Shanah Segal provided a psychiatric competency report, pursuant to the same January 16, 2020 order from Judge Russo (the "Segal Report"), in which she concluded that the defendant was capable of understanding the proceeding against him and to assist in his defense. Dr. Segal observed that the defendant's "thought process was coherent, logical, and goal oriented." (Segal Report at 2). Dr. Segal also stated that the defendant "demonstrated a

factual and rational understanding of the legal process and his charges." (*Id.* at 4). In summary, Dr. Segal concluded that:

> Mr. Thomas exhibits some psychotic symptoms, specifically auditory hallucinations, however he displayed an ability to self-regulate. He appears to have an understanding of his court case and legal proceedings and demonstrated sufficient emotional control. He seems to have the ability to effectively assist legal counsel in his own defense, make complex and consequential legal decisions, and meaningfully and appropriately participate in court proceedings. He demonstrated the cognitive ability to retain information. It is my professional opinion that, at this time, Mr. Thomas has the capacity to proceed.

(*Id.* at 4).

On February 20, 2020, the defendant was transferred to the Metropolitan Correctional Center in Manhattan ("MCC"), pursuant to this Court's February 5, 2020 Order directing that the Bureau of Prisons ("BOP") conduct a psychiatric evaluation of the defendant, in accordance with 18 U.S.C. §§ 4241 and 4247, to assess the defendant's competency to stand trial. (Dkt. No. 20).

On March 20, 2020, following the evaluation at the MCC, BOP forensic psychologist Dr. Kari Schlessinger provided this Court with a psychiatric competency report (the "Schlessinger Report"). Dr. Schlessinger noted that, at the time of the defendant's transfer, the defendant was taking the anti-psychotic medication, Latuda, but that upon his arrival at the MCC, his prescription was changed to Zyprexa. (Schlessinger Report at 11). Dr. Schlessinger stated that the defendant "would not complete any psychological testing" and would not participate in any assessments. (*Id.* at 12). Dr. Schlessinger diagnosed the defendant with Schizophrenia and assessed his prognosis as "poor," but noted that the defendant "may show increased improvement in a more intensive and structured setting such as an inpatient hospital where his medication compliance can be monitored." (*Id.* at 13-14). Dr. Schlessinger concluded that the defendant, at that time, did not have a rational and factual understanding of the proceedings against him, and was not capable of assisting counsel with his defense. (*Id.* at 18). Dr. Schlessinger recommended that the defendant be committed for a period of restoration to competency, pursuant to 18 U.S.C. § 4241(d). (*Id.* at 19).

On April 19, 2020, this Court found—with the consent of both the defense and the Government—that the defendant was "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense." (Dkt. No. 30 at 1-2). Accordingly, the Court ordered that the defendant be committed to the custody of the Attorney General of the United States, pursuant to 18 U.S.C. § 4241(d), and that he be hospitalized for a period not to exceed four months to "determine whether there is a

substantial probability that in the foreseeable future the defendant will attain the capacity to permit criminal proceedings to go forward against him." (*Id.* at 2).

On June 11, 2020, the defendant was transferred to FMC Springfield. The defendant was assessed from June 11 to October 13, 2020. On November 10, 2020, FMC Springfield sent the Court a forensic mental health report prepared by Dr. Preston Baecht (the "Baecht Report"). Dr. Baecht noted that the defendant was prescribed Zyprexa upon his admission to FMC Springfield. (Baecht Report at 10). On July 20, 2020, the defendant's Zyprexa prescription was increased, which resulted in a "mild improvement in his mental state." (*Id.* at 11). On August 24, 2020, his Zyprexa prescription was increased again. (*Id.* at 12). The defendant "consistently refused to consider changing medications." (*Id.*). Moreover, Dr. Baecht noted that the defendant "typically declined to leave his room to cooperate with clinical interviews," and "declined to participate in competency restoration groups" due to his asserted concern that he might be harmed. (*Id.* at 2; *see also id.* at 3 (the defendant "typically declined to leave his room to participate in clinical interviews and generally only spoke to me for a few minutes at a time at his door before walking away")).

Dr. Baecht diagnosed the defendant with Schizophrenia. Dr. Baecht observed that the defendant "likely . . . has a sufficient factual understanding of the roles of courtroom participants, and any deficits in factual knowledge could likely be remedied with education." (*Id.* at 14). However, the defendant's "paranoid ideation hinders his rational appreciation of the case" and renders him "unable to assist properly in his own defense." (*Id.*). Accordingly, Dr. Baecht stated that the defendant "remains incompetent to proceed at the present time." (*Id.*).

Dr. Baecht next addressed the defendant's future prognosis. First, Dr. Baecht stated that "[t]ypically, symptoms of Schizophrenia . . . are amenable to treatment with anti-psychotic medication, and the scientific research related to successful competency restoration suggests that most psychotic individuals can be restored to competency following roughly four to eight months of treatment with anti-psychotic medication." (*Id.*). Dr. Baecht further noted that the medical records reflect that the defendant "typically experienced a reduction in symptoms when compliant with psychiatric medication during his prior psychiatric hospitalizations." (*Id.*).

However, Dr. Baecht observed that the defendant continues to experience severe symptoms, "despite approximately eight months of medication compliance at a therapeutic dose of the anti-psychotic medication Zyprexa." (*Id.* at 15). Dr. Baecht stated that "it is possible that [the defendant] might respond more favorably to a different anti-psychotic medication," but that the defendant "is currently unwilling to voluntarily consent" to a different medication. (*Id.*). Moreover, Dr. Baecht stated that "there is insufficient information to support the conclusion that [it] is *substantially likely* that he would be restored in the *foreseeable* future on a different medication." (*Id.* (emphasis in original)). Dr. Baecht rejected the assessment by Dr. Segal and Dr. Casarella that the defendant was competent to proceed during the time when he was "taking the anti-psychotic medication Latuda," and asserted that the defendant's poor response to his

4

current medications "thus far does not support the conclusion that he is *substantially likely* to be restored to competency in the *foreseeable* future" while taking his current medications. (*Id.* (emphasis in original)). In conclusion, Dr. Baecht stated that, in his opinion, the defendant "is unlikely to be restored to competency in the foreseeable future." (*Id.*).

### B.  Applicable Law

After making a preliminary finding of incompetence, the District Court "shall commit the defendant to the custody of the Attorney General," who "shall hospitalize the defendant for treatment in a suitable facility." 18 U.S.C. § 4241(d). "Such hospitalization seeks 'to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward.'" *United States v. Magassouba*, 544 F.3d 387, 393 (2d Cir. 2008) (quoting 18 U.S.C. § 4241(d)(1)) (alterations omitted). "This evaluative hospitalization is limited to a reasonable period of time, not to exceed four months." *Id.* (internal quotation marks and citation omitted).

If "the director of the hospital facility to which the defendant is committed determines that he has attained the requisite mental competency, the director shall so certify to the court, which must then hold another competency hearing." *Id.* at 394 (citing 18 U.S.C. § 4241(e)). If the court finds by a preponderance of the evidence that the defendant is competent to stand trial, it "shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings." 18 U.S.C. § 4241(e).

Alternatively, if the Court determines that the defendant has *not* attained the competency necessary to proceed to trial after the initial hospitalization period, there are two options.

First, the Court may refer the defendant for civil commitment pursuant to 18 U.S.C. § 4246. *See* 18 U.S.C. § 4241(d). Under Section 4246, if the director of the BOP facility housing a defendant under Section 4241(d) certifies that the defendant is suffering from a mental disease or defect "as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another," and the Court finds the same by clear and convincing evidence after a hearing, the Attorney General shall release the defendant to the appropriate state officials for commitment. 18 U.S.C. § 4246(a)-(d). Before such a hearing, the Court "may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the Court. 18 U.S.C. § 4246(b); *see also* Baecht Report at 15 (stating that if the defendant is "adjudicated as unrestorable to competency," then "a mental health assessment to determine whether he suffers from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another would need to be completed").

Second, the Court may order an additional period of hospitalization for the purpose of seeking to restore the defendant's competency to stand trial. 18 U.S.C. § 4241(d)(2)(A). This additional period of hospitalization must be reasonable, but it is not limited to the four months set forth in Section 4241(d)(1). *See Magassouba*, 544 F.3d at 406 ("The fact that Congress placed no outside limit on this reasonable period (akin to the four months referenced in § 4241(d)(1)) affords district courts considerable discretion in making case-by-case determinations as to what reasonable period of additional custodial hospitalization will likely restore a defendant to competency consistent with due process."). "Such additional commitment is not, however, presumed." *Id.* Rather, an additional period of commitment under Section 4241(d)(2)(A) "is authorized only if the court finds that there is a substantial probability that within such additional period of time the defendant will attain the capacity to permit the proceedings to go forward." *Id.* (internal quotation marks and citations omitted).

**C. Discussion**

The Government respectfully submits that the Court should order an evidentiary hearing, so that the Court can determine whether to direct an additional period of hospitalization under Section 4241(d)(2)(A). As set forth above, to order an additional period of hospitalization, the Court must find that there is a substantial probability that within such additional period of time the defendant will attain the capacity to permit the proceedings to go forward.

To be clear, the Government does not dispute Dr. Baecht's opinion that the defendant is presently suffering from a mental disease that renders him "unable to assist properly in his own defense." (Baecht Report at 14). The Government also does not dispute Dr. Baecht's opinion that the defendant, at this time, is not competent to proceed to trial.

The Government respectfully submits, however, that Dr. Baecht's opinion that the defendant "is unlikely to be restored to competency in the foreseeable future" (*id.* at 15) should be assessed at a hearing. As the Government understands it, this opinion is based on Dr. Baecht's assessment that:

> (1) "[T]here is insufficient information to support the conclusion that [it] is *substantially likely* that [the defendant] would be restored in the *foreseeable* future on a different medication"; and

> (2) The defendant's "poor response" to his current medications "does not support the conclusion that he is *substantially likely* to be restored to competency in the *foreseeable* future while taking these medications."

(*Id.* (emphases in original)). Put differently, Dr. Baecht's opinion appears to be that it is not "substantially likely" that the defendant will be restored to competency through either of the

6

Honorable Cathy Seibel
December 8, 2020

identified treatment options—changing the defendant's medication or dosage, or continuing the defendant on the same medication for a longer period of time.

For at least three reasons, the Government respectfully submits that Dr. Baecht's opinion regarding the defendant's future prognosis should be assessed at a hearing.

First, other medical professionals previously concluded that the defendant was competent to stand trial. Dr. Casarella and Dr. Segal both examined the defendant on February 5, 2020, and each concluded that the defendant was capable of understanding the proceeding against him and assisting in his defense. The fact that the defendant was assessed as competent approximately ten months ago potentially indicates that the defendant could be restored to competency with an additional period of hospitalization.

Second, the defendant appears to have better outcomes when he is treated with Latuda instead of Zyprexa. At the time of the defendant's examination on February 5, 2020, the defendant was taking Latuda and, as Dr. Casarella observed, "Mr. Thomas' current prescribed psychotropic medication regimen has aided in mood stability and management of symptoms of psychosis." (Casarella Report at 6). The defense expert, Dr. Levin, also observed that the defendant's treatment with Latuda appeared to have improved the defendant's condition. (Levin Report at 8). However, when the defendant was transferred to the MCC on February 20, 2020, his medication was switched to Zyprexa, which he was also prescribed while hospitalized at FMC Springfield. Dr. Baecht recognized the possibility that the defendant "might respond more favorably to a different anti-psychotic medication," but stated that the defendant was unwilling to consent to a change in medication. (Baecht Report at 15). The Government respectfully submits that Dr. Baecht and other possible witnesses who have evaluated the defendant in this case should be examined at a hearing to determine whether a different medication—Latuda or another treatment—might have a better chance of restoring the defendant to competency. If the Court finds, after an evidentiary hearing, that another medication is appropriate, and the defendant continues to withhold consent, it may be appropriate for the Court, pursuant to *Sell v. United States*, 539 U.S. 166 (2003), to order the defendant to take the other medication.[1]

Finally, even if switching medication is not necessary, the Court could find that an additional period of hospitalization is appropriate. As Dr. Baecht observed, the symptoms of Schizophrenia are typically "amenable to treatment with anti-psychotic medication, and the

---

[1] *See Sell*, 539 U.S. at 180-81 (holding that an incompetent defendant may be involuntarily medicated for the sole purpose of rendering him competent to stand trial if four criteria are satisfied: (1) there are important government interests in trying the individual; (2) the treatment will significantly further those interests; (3) the treatment is necessary to further those interests, considering any less intrusive alternatives; and (4) the treatment is medically appropriate); *see also United States v. Sergentakis*, 216 F. Supp. 3d 343, 347–48 (S.D.N.Y. 2016).

7

scientific research related to successful competency restoration suggests that most psychotic individuals can be restored to competency following roughly four to eight months of treatment with anti-psychotic medication." (Baecht Report at 14). As to the defendant specifically, Dr. Baecht observed that the defendant "typically experienced a reduction in symptoms when compliant with psychiatric medication during his prior psychiatric hospitalizations." (*Id.*). The defendant also has a history of living independently and has some history of college and employment. (*See generally* Levin Report at 2). The defendant clearly suffers presently from a mental disease, but treatment has worked in the past. It is possible that the defendant's refusal to "participate in competency restoration groups" (Baecht Report at 2), or to consider other medications while hospitalized at FMC Springfield, reduced the efficacy of his treatment, and that, accordingly, an additional reasonable period of hospitalization should be attempted.

As the Second Circuit has observed, Section 4241 attempts to balance "two well-established principles." *Magassouba*, 544 F.3d at 402. The first "recognizes the sovereign's power to bring an accused to trial as fundamental to a scheme of ordered liberty and prerequisite to social justice and peace." *Id.* at 402-03 (internal quotation marks, alterations, and citations omitted). "The second holds that, consistent with due process, a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Id.* at 403 (internal quotation marks and citations omitted).

The Government submits that the first principle recognized by the Second Circuit would be significantly undermined if the Court pursued potential civil commitment pursuant to Section 4246 without first conducting an evidentiary hearing in order to determine whether an additional period of hospitalization is appropriate under Section 4241(d)(2)(A). The defendant is alleged to have committed an extremely serious offense, and there are reasons to believe that he can be restored to competency.

Accordingly, the Government respectfully requests that the Court direct an evidentiary hearing to determine whether "there is a substantial probability" that an additional period of hospitalization will enable the defendant to "attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A). Such a hearing would entail, among other things, testimony from Dr. Baecht and other medical professionals who have evaluated the defendant in the course of this case, in order to permit the Court and parties to explore their assessments as to the defendant's prognosis, and for the Court to determine appropriate next steps in this matter.

### II. The Defense Position

On behalf of defendant, counsel Sternheim and Sussman believe the court should accept the Bureau of Prison's conclusion and move to a proceeding on dangerousness. Defendant would further stipulate to a finding that Mr. Thomas is currently dangerous. In turn, this should cause

the termination of the pending federal case and his remand to the Bureau of Prisons for proper care pending its determination that he is no longer dangerous.

We value the BOP conclusions because they resulted from months of observation and study of our client. Other evaluations, particularly those cited by the government as supporting competency, were far more cursory and do not provide a current basis for this court to determine "that there is a substantial probability that within such additional period of time the defendant will attain the capacity to permit the proceedings to go forward." Indeed, there is simply no reasonable basis to believe this.

We oppose further efforts at "restoration" of competency because this was not recommended [though it certainly could have been] by the experienced forensic evaluators employed by BOP and because they cited no reasonable likelihood that this will occur. Defendant's medical records make clear that he has long experienced the auditory hallucinations which predicate the ultimate finding of incompetence. Defendant has also been compliant with medication and, again, BOP evaluators could have concluded that his competency cannot be assessed absent a change in medication. They did not. In our view, had BOP evaluators believed that another regiment of psychotropic drugs would assist in the restoration process, they would have so stated and requested more time to both administer these drugs and discern their impact. Finally, in light of the delay in Mr. Thomas' transport following this court's approval of the BOP forensic evaluation and the five weeks which have already passed since its conclusion, we believe a further hearing process on restoration would unduly prolong this proceeding without any reasonable likelihood of a different outcome.

Honorable Cathy Seibel
December 8, 2020

      In this context, we believe that 18 U.S.C. section 4246 should be triggered, and as stated above, are prepared to stipulate to Mr. Thomas' current status under section 4241(d) and his commitability under that section.

                          Respectfully submitted,

                          AUDREY STRAUSS
                          Acting United States Attorney for the
                          Southern District of New York

By:    /s/
      Lara Eshkenazi
      Michael Krouse
      Lindsey Keenan
      Assistant United States Attorneys
      (212) 637-2758 / 2279; (914) 993-1907


      GRAFTON E. THOMAS


By:    /s/
      Michael H. Sussman, Esq.
      Bobbi Sternheim, Esq.
      Attorneys for Defendant