

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 6, 2021

**BY ECF**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    **United States v. Grafton E. Thomas**, 20 Cr. 21 (CS)

Dear Judge Seibel:

      The Government writes in response to the Court's June 21, 2021, Order directing the Government to address (i) "what efforts have been made to get the State of New York to assume responsibility for Defendant's care, custody, and treatment," and (ii) "whether, should the Court not dismiss the indictment, [the Government] contemplates pursuing the charges should Defendant be determined to be restored to competence (and if so, the authority on which it relies, and if not, what purpose would be served by maintaining the indictment in place)." (Dkt. No. 58).

      With respect to the first issue, efforts to transfer the defendant to the care and custody of New York State have been made by the Special Assistant United States Attorney charged with petitioning for the defendant's civil commitment (the "SAUSA").

      Pursuant to 18 U.S.C. § 4246(a), "if the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons . . . who has been committed to the custody of the Attorney General pursuant to section 4241(d) . . . is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined." Thereafter, "the court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." Because the defendant is confined at the Federal Medical Center in Springfield, Missouri, proceedings related to the defendant's civil commitment are occurring in the Western District of Missouri (the "WDMO"). S*ee United States v. Grafton Thomas*, 6:21-cv-3126 (W.D. Mo.) (the "Civil Commitment Proceeding").

      The Government has conferred with the SAUSA, and learned that although a Certificate of Mental Disease or Defect and Dangerousness was submitted to the WDMO on May 21, 2021, the defendant's attorney in the Civil Commitment Proceeding requested an independent evaluation of

the defendant's dangerousness.  That evaluation is scheduled for July 7, 2021, and the examiner's report will be submitted within 30 days of the evaluation.  After the WDMO has received and reviewed the report, it will hold a hearing pursuant to 18 U.S.C. § 4246(c) to determine whether civil commitment is appropriate.

In the interim, a licensed clinical social worker employed by the Bureau of Prisons submitted a request to the New York State coordinator for the Interstate Compact on Mental Health, who is employed by the New York State Office of Mental Health (the "Interstate Compact Request"). The Interstate Compact Request provided details about the charges in the instant case, the defendant's background, and the defendant's mental health, and outlined two transfer options: first, New York State could assume full responsibility for the defendant in which case the federal commitment proceedings would be dropped; or second, New York State could assume responsibility with the federal government acting as a backstop, such that a United States Probation Officer would act as a liaison between state mental health professionals and the Court, and would be responsible for communicating with the Court regarding the defendant's condition and compliance with treatment.  A supervisor from the New York State Office of Mental Health responded to the Interstate Compact Request, stating that as a policy, the New York State Office of Mental Health will not accept a direct transfer from a Federal Prison Facility.

At present, the defendant requires Level IV psychiatric care, which can only be provided within the BOP system by the Federal Medical Facilities in Springfield, Missouri, and Butner, North Carolina.  If the defendant's condition improves, he could be transferred to other Federal Medical Facilities, and eventually, if there is a determination that the defendant's dangerousness has subsided, he could be recommended for conditional release pursuant to 18 U.S.C. § 4246(e).  The SAUSA has advised that before the WDMO holds a hearing in the Civil Commitment Proceeding, the Government will again contact the New York State coordinator for the Interstate Compact on Mental Health regarding transferring the defendant to the custody of New York State.  If that request is denied and the defendant is committed after the hearing, the Government will make the same request on an annual basis, apprising New York State of any changes in the defendant's condition or confinement.

With respect to the second issue, the Government's present intention is to pursue the charges against the defendant if he is restored to competency.  Without citation to any authority, defense counsel asserts that "the criminal charges should now be dismissed" because 18 U.S.C. § 4246 "does not contemplate the resuscitation of criminal charges." (Dkt. No. 57 at 2).  More accurately stated, 18 U.S.C. § 4246 is silent on the issue of a pending indictment, and thus does not mandate dismissal.  There is no statutory basis for the defendant's position.  *See United States v. Ecker*, 78 F.3d 726, 731 (1st Cir. 1996) ("None of Ecker's statutory arguments persuade us that Congress intended sections 4241 and 4246 to require *sub silentio* the dismissal of a pending indictment").  To the contrary, the Speedy Trial Act expressly excludes "*[a]ny* period of delay resulting from the fact that the defendant is mentally incompetent."  18 U.S.C. § 3161(h)(4) (emphasis added).

Multiple courts have determined the Speedy Trial Act exclusion set forth in 18 U.S.C. § 3161(h)(4) applies to any period of commitment—whether for restoration to competency, or due to a finding of dangerousness, during which time a pending indictment remains in place. *See, e.g., Ecker*, 78 F.3d at 731-32 ("the pending indictment persists even after the defendant has been found unlikely to recover competency and has been committed as dangerous"); *United States v. Sheffield*, 06 Cr. 74, 2010 WL 4023969, at *1 (N.D. Fla. Oct. 13, 2010) ("the Court finds that dismissal of the charges at the present time, 22 months after the Defendant was first committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246 for treatment of a dangerous mental defect and well within the range of the potential statutory penalties the Defendant would face should he be convicted of the charges against him, is not warranted"); *United States v. Nunez*, 00 Cr. 199S-19, 2006 WL 2000111, at *2 (W.D.N.Y. July 17, 2006) ("this Court notes that the five year delay in bringing Mr. Nunez to trial does not mandate dismissal of the Indictment"); *see also United States v. McAfee*, 18 Cr. 425, 2021 WL 106268, at *3 (S.D.N.Y. Jan. 12, 2021) (denying motion to dismiss indictment where defendant found incompetent to proceed though not a danger under Section 4246); *United States v. West*, 03 Cr. 128, 2007 WL 1851305, at *7 (D. Colo. June 26, 2007) ("4241 and 4246 do not reference or require dismissal of the indictment"); *United States v. Peppi*, No. Cr. 06-157, 2007 WL 674746, at *4 (D.N.J. Feb. 28, 2007) ("the release of defendants who, like Mr. Peppi, are incompetent to stand trial and whose release would not create a substantial risk of danger to others or their property is mandatory, and the Government is free to exercise its discretion in dismissing or proceeding with an indictment against such an individual").

Defense counsel asserts that *United States v. McAfee* somehow supports dismissal because in that case the Government sought to impose bail conditions after the defendant was released from confinement upon findings that while he was incompetent to stand trial, he was not dangerous. Defense counsel's argument entirely misses the point that although "the likelihood of [the defendant's] regaining competency [was] minimal," 2021 WL 106268, at *2, the indictment in that case remained in place.

Here, in view of the nature and seriousness of the offenses, the Government has a strong interest in pursuing the charges should the defendant be restored to competency, whether that restoration occurs months or years from now. If the indictment is dismissed, and the defendant is restored to competency after the seven-year statute of limitations for hate crimes not resulting in death has expired, the Government would be unable to vindicate that interest. The defendant initially was transferred to the Federal Medical Facility in Springfield, Missouri, on June 11, 2020, and has been confined there for approximately thirteen months, a period "well within the range of the potential statutory penalties the defendant would face should he be convicted of the charges against him." *Sheffield*, 2010 WL 4023969, at *1. Further, defense counsel is correct that if the defendant's dangerousness subsides, and he is conditionally discharged, 18 U.S.C. § 4246(e) permits the court in the district of confinement to impose conditions on the defendant's release. However, pursuant to Section 4246(e), those conditions are related to "medical, psychiatric, or psychological care," *not* potential criminal conduct. As in *McAfee*, if the defendant was discharged from civil commitment, the Government would seek to impose conditions aimed at ensuring the defendant's criminal conduct did not recur, and without an indictment in place, the Government would have no authority to do so.

Although it is possible the Government's interest in pursuing the charges and maintaining the indictment in place may diminish if the defendant's incompetency persists despite consistent and continued treatment, and the Government will continue to assess those considerations going forward, the Government is in no position to dismiss the indictment now, before the Civil Commitment Proceeding has concluded, and treatment at a suitable facility has commenced.

          Respectfully submitted,

          AUDREY STRAUSS
          United States Attorney for the
          Southern District of New York

By: _____
     Lindsey Keenan
     Lara Eshkenazi
     Kimberly Ravener
     Assistant United States Attorneys
     (212) 637-1565 / 2758 / 2358